Rebecca A. Rainey, ISB No. 7525
Nicholas A. Warden, ISB No. 9179
FISHER RAINEY HUDSON
910 West Main Street, Ste. 254
Boise, ID 83702
Telephone: (208) 345-7000
Facsimile: (208) 297-2689
rar@frhtriallawyers.com
naw@frhtriallawyers.com

Attorneys for Plaintiffs

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KURT LEWIS and CONNIE LEWIS,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA; and DOES I-X<br><br>Defendant. | Case No.:  14-448<br><br><br>**COMPLAINT AND<br>DEMAND FOR JURY TRIAL** |

COME NOW, the above-captioned Plaintiffs, by and through their counsel of record, and hereby complain and allege as follows:

### PARTIES, JURISDICTION, AND VENUE

1.     Kurt Lewis ("Kurt") and Connie Lewis ("Connie") are currently residents of Haines in Baker County, Oregon.

2.     Kurt is a former member of the armed services who received an honorable discharge after service with the U.S. Army from 1971 to 1973.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 1**

3.    Connie has been married to Kurt for over twenty (20) years.  At the time of the conduct alleged herein and at all times thereafter Connie has been married to and resided with Kurt.

4.    Defendant United States of America is named pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2679, as the personal injuries alleged herein arose and/or resulted from the negligent or wrongful acts and omissions of the United States Department of Veterans Affairs, the Boise VA Medical Center, the Boise VA Specialty Clinic, members of the approval committee for said facilities, and the employees of all such agencies and facilities while acting within the scope of such employee's office or employment on behalf of the United States Department of Veterans Affairs.

5.    Federal jurisdiction is proper pursuant to 28 U.S.C. § 1346(b)(1).

6.    In accordance with 28 U.S.C. § 2401(b), Plaintiff presented this claim in writing to the United States Department of Veterans Affairs claims office on December 30, 2013.

7.    On or about August 11, 2014, more than six months after the claim was presented, the United States Department of Veterans Affairs issued a final denial of administrative tort claim.

8.    Venue in this Court is proper pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1402(b) because the wrongful acts and omissions alleged herein occurred at the Boise VA treatment facilities located in Boise, Idaho.

9.    The amount in controversy exceeds seventy-five thousand dollars ($75,000.00).

**COMPLAINT AND DEMAND FOR JURY TRIAL - 2**

## GENERAL ALLEGATIONS

10.     On May 27, 2010, Kurt sought treatment from the Boise VA Medical Center Emergency Department with complaints of severe neck pain, as well as pain and numbness radiating through both arms and hands, such pain being more severe in Kurt's right arm.

11.     Kurt was examined by physician's assistant Thomas Hengst who ordered an MRI of Kurt's spine and right shoulder (the "VA MRI").

12.     Because the VA did not have on-site staff qualified to review the results, the results of the MRI were sent to a third party facility for review and interpretation.

13.     On June 16, 2010, Dr. Gabrielle Bergman submitted the written MRI report to physician's assistant Hengst and Dr. Kevin Campbell of the Boise VA Medical Center.

14.     In his report, Dr. Bergman noted bilateral narrowing of uncovertebral osteophytes between the C7 and T1 vertebrae, especially on the right side.

15.     Despite Dr. Bergman's report, none of Kurt's treatment providers within the Boise VA facilities identified Kurt's spine condition as the source of his pain and other symptoms.

16.     Rather, Kurt's treatment providers within the Boise VA ordered that Kurt undergo an EMG study and, following such study, diagnosed Kurt with carpel tunnel syndrome in both wrists and ulnar nerve entrapment in both elbows.

17.     The Boise VA scheduled Kurt for an October 10, 2010, pre-operation exam for carpel tunnel surgery with Dr. Humphrey at the Boise VA Specialty Clinic.

18.     On October 7, 2010, Kurt received a notice via U.S. Mail that his October 10, 2010, appointment for a pre-operation exam for carpel tunnel surgery with Dr. Humphrey had

**COMPLAINT AND DEMAND FOR JURY TRIAL - 3**

been canceled due to "overbooking." The notice further informed Kurt that he would be contacted shortly with a new appointment date.

19.     The pain in Kurt's neck, as well as the pain and numbness in his arms and hands persisted.  His condition continued to worsen.

20.     Having not been contacted with a new appointment date, on October 14 and again on October 24, 2010, Kurt contacted the Specialty Clinic via telephone, attempting to re-schedule his pre-operation exam with Dr. Humphrey.

21.     During the October 24, 2010, conversation Kurt was told that a new appointment had been scheduled for November 10, 2010.

22.     On October 27, 2010, Kurt received a notice via U.S. Mail that his November 10, 2010, appointment for a pre-operation exam for carpel tunnel surgery with Dr. Humphrey had been canceled due to "overbooking."

23.     The pain in Kurt's neck, as well as the pain and numbness in his arms and hands persisted.  His condition continued to worsen.

24.     On October 28, 2010, Kurt called the VA Specialty Clinic attempting to re-schedule his appointment for a pre-operation exam for carpel tunnel surgery with Dr. Humphrey.

25.     Kurt was advised that his appointment for a pre-operation exam for carpel tunnel surgery with Dr. Humphrey would be rescheduled for February 27, 2011.  Kurt protested the new date and, as a result of his protests, the VA agreed to honor the November 10, 2010, appointment date previously set.

26.     On November 10, 2010, Kurt traveled to Boise and went to the VA Specialty Clinic for his appointment for a pre-operation exam for carpel tunnel surgery with Dr. Humphrey.  However, rather than scheduling surgery, Dr. Humphrey recommended that Kurt

**COMPLAINT AND DEMAND FOR JURY TRIAL - 4**

engage in physical therapy and that Kurt be examined by "a neurologist or a spine specialist as soon as possible."

27.     Despite Dr. Humphrey's recommendation, the VA approval committee denied Kurt's request to be examined by a neurologist or spine specialist.

28.     The pain in Kurt's neck, as well as the pain and numbness in his arms and hands persisted.  His condition continued to worsen.

29.     In response to the VA approval committee's denial of Kurt's request to be examined by a neurologist or spine specialist, Kurt personally funded an examination by a neurosurgeon named Dr. Moda in private practice.

30.     Dr. Moda examined Kurt on December 23, 2010.  Based on his examination, Dr. Moda recommended that Kurt engage in a minimum of twelve physical therapy treatments and a second MRI of Kurt's neck and spine.

31.     Kurt submitted Dr. Moda's recommendation to the VA approval committee.

32.     Despite Dr. Moda's recommendation, the VA approved only six physical therapy sessions and denied Kurt's request to get an additional MRI of Kurt's neck and spine.

33.     The pain in Kurt's neck, as well as the pain and numbness in his arms and hands persisted.  His condition continued to worsen.

34.     Because of the ongoing pain, on February 3, 2011, Kurt returned again to the Boise VA Medical Clinic for a follow-up appointment.  PA Hengst states in his notes from the February 3, 2011, appointment that "there is some kind of disconnect going on with either ortho, the approving committee or really I am not sure? I am not sure why patient is coming back to me for the same condition when I am really not able to help him . . . ?"

**COMPLAINT AND DEMAND FOR JURY TRIAL - 5**

35.     After receiving his last physical therapy session on March 11, 2011, Kurt received no further medical follow-up, diagnostic testing or contact from the VA for a period of one year.

36.     Throughout that year, Kurt's symptoms worsened and he continued to experience severe pain in his neck and in both arms and hands, repeated muscle spasms, muscle atrophy, intermittent paralysis and tingling in both arms and hands, loss of sleep, loss of appetite, depression and anxiety.  Kurt began contemplating suicide as a means of stopping the pain.

37.     Sometime in the summer or fall of 2012, Kurt became eligible for Medicare.

38.     On October 29, 2012, using his Medicare benefits, Kurt went to Dr. Jorgenson of the Spine Institute of Idaho to seek the treatment that had previously been denied by the VA approval committee.  Consistent with the recommendations of Dr. Humphrey and Dr. Moda, Dr. Jorgenson ordered a second MRI of Kurt's spine (the "Jorgenson MRI").

39.     On November 5, 2012, Dr. Yokan of the Boise VA Medical Clinic, conducted carpel tunnel surgery on Kurt's left and right wrist.  Following surgery, Kurt underwent post-operative treatment.

40.     Despite the carpel tunnel surgery performed by Dr. Yokan, the pain in Kurt's neck, as well as the pain and numbness in his arms and hands persisted.  His condition continued to worsen.

41.      The MRI of the spine ordered by Dr. Jorgensen was conducted on November 19, 2012.  Similar to the VA MRI  received by the VA nearly two years earlier, the report from the Jorgenson MRI confirmed bilateral narrowing of the C7 and T1 vertebrae.

42.     Kurt returned to the Spine Institute of Idaho on November 26, 2012, and was informed of the findings contained in the Jorgenson MRI report.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 6**

43.     Prior to the November 26, 2012, appointment at the Spine Institute of Idaho, wherein Kurt was informed of the results of the Jorgenson MRI, Kurt had never been advised and was wholly unaware that his pain and other related symptoms were likely caused by a degenerative spine condition.

44.     After receiving a correct diagnosis, Kurt received non-surgical treatment through the Spine Institute of Idaho in an effort to obtain relief from his pain and related symptoms. Because Kurt did not gain relief from his symptoms through non-surgical treatment options, in May of 2013 Dr. Zimmerman of the Spine Institute of Idaho performed an anterior cervical discectomy and fusion (ACDF) surgery in order to correct the bilateral uncovertebral narrowing of the C7 and T1 vertebrae.

45.     After undergoing surgery in May of 2013, Kurt experienced moderate relief from his pain and related symptoms.

46.     As a result of the failure of VA medical personnel to properly diagnose and treat Kurt for his pain and related symptoms, Kurt suffered severe pain and nervous system problems including numbness and tingling in his arms and hands for a period of roughly two and one half years.

47.     As a result of the failure of VA medical personnel to properly diagnose and treat Kurt for his pain and related symptoms, Kurt was unable to sleep through the night without being awakened by pain for a period of roughly two and one half years.

48.     As a result of the failure of VA medical personnel to properly diagnose and treat Kurt for his pain and related symptoms, Kurt is now only partially ambulatory.  He can neither sit, lie flat, nor stand for extended periods of time.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 7**

49.     As a result of the failure of VA medical personnel to properly diagnose and treat Kurt for his pain and related symptoms, Kurt's activities and daily living are permanently and severely restricted and impaired.

50.     As a result of the failure of VA medical personnel to properly diagnose and treat Kurt for his pain and related symptoms, Kurt was not able to provide aid, care, comfort, society, companionship, services, protection and conjugal affection to his spouse for a period of roughly two and one half years and his ability to do so continues to be impaired to this day.

51.     As a result of the failure of VA medical personnel to properly investigate the source of Kurt's symptoms, Kurt was unable to work for a period of roughly two and one half years and his ability to realize his full working potential continues to be impaired to this day.

52.     As a result of the failure of VA medical personnel to properly investigate the source of Kurt's symptoms, both Kurt and Connie have, and continue to endure extensive and ongoing mental and emotional pain and suffering, which has manifested itself in the form of physical injury as set forth in the preceding paragraphs.

<u>**COUNT I**</u>
<u>**MEDICAL NEGLIGENCE**</u>

53.     The Plaintiffs hereby incorporate and re-allege all previous paragraphs of this Complaint as if fully set forth herein.

54.     Defendant healthcare providers owed a duty to Kurt to provide healthcare that meets the standard of healthcare provided by other qualified physicians in the same community or similar communities, taking into account their training, experience and the degree of expertise to which they hold themselves out to the public.

55.     The Boise VA medical facilities and the employees who participated in the diagnosis of Kurt's injuries and/or the administration of healthcare services to Kurt violated the

**COMPLAINT AND DEMAND FOR JURY TRIAL - 8**

applicable standards of healthcare practice for the community and were negligent and reckless by failing to properly diagnose and/or treat Kurt for his pain and related symptoms over a period of approximately two and one-half years despite having in their possession the report and findings from the VA MRI which contained the information necessary to properly diagnose and/or treat Kurt for his pain and related symptoms.

56.     The medical negligence and reckless misconduct on the part of the Department of Veterans Affairs, the Boise VA medical facilities and their employees in failing to meet the applicable standards of care was a direct and proximate cause of, and/or a substantial factor in causing, the injury and damages suffered by the Plaintiffs.

57.     Such injury includes, without limitation, past, present and future physical disability, past, present and future physical and mental pain and suffering, substantial medical bills, therapy bills, home care expenses, transportation expenses, past, present and future loss of consortium, past, present and future loss of enjoyment of life, and past, present and future loss of income.

58.     As such, Plaintiffs are entitled to a monetary award of general and special damages in an amount to be proven at trial.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues properly tried by a jury in the above-entitled matter.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against the Defendants as follows:

59.     For damages in an amount to be proven at trial;

**COMPLAINT AND DEMAND FOR JURY TRIAL - 9**

60.     For costs of suit, including reasonable attorneys' fees, or ten thousand dollars ($10,000.00) should this matter be uncontested;

61.     For prejudgment interest to the Plaintiffs; and

62.     For such other and further relief as this Court deems just and equitable.

DATED this 22nd day of October, 2014.


FISHER RAINEY HUDSON


_____/s/ Nicholas Warden_____
Nicholas Warden – Of the Firm
Attorney for Plaintiffs

**COMPLAINT AND DEMAND FOR JURY TRIAL - 10**